In the matter of the estate of Thompson.

---

In the matter of the estate of ABRAHAM G. THOMPSON, deceased, on the appeal of Edward G. Thompson, his administrator, &c.

A recovery in the supreme court, against an administrator, after a trial at law on the merits, for services rendered by the plaintiff as proctor and counsel for the administrator, in the administration of the estate, adjudges that such services constituted actual, necessary, just and reasonable expenses of the administration, which must be borne by the estate. And the surrogate has power to order the administrator to pay the amount of the judgment, although there are not sufficient assets to pay the same and all the debts of the intestate which constitute claims against his estate, in full. SUTHERLAND, J. dissented.

The surrogate has the same power to direct that an execution be issued upon a judgment recovered against an administrator for liabilities incurred by

him in the administration of the estate, as he has to order such process to issue upon a judgment recovered for a debt owing by the deceased. And it is his duty so to order, if the creditor shall require it.

THIS is an appeal by Edward G. Thompson, administrator with the will annexed of Abraham G. Thompson, deceased, from an order made by the surrogate of the county of New York, on the 31st of January, 1863, ordering said administrator to pay to Edward P. Cowles $2000, with interest from February 27, 1862, and $25 costs. Cowles recovered a judgment February 27, 1862, in the supreme court, against Edward G. Thompson as such administrator, for $2000. The judgment not being paid, Cowles applied to the surrogate by petition, and obtained from him an order or citation requiring said administrator to render an account of his proceedings as such, and show cause why he should not be ordered to pay the judgment, or why an execution should not be issued upon it to collect the amount due upon it, and why he should not render an account of his acts and doings, and of the moneys in his hands. The account was rendered. By it, it appeared that the administrator had in his hands sufficient assets to pay the judgment of Cowles in full, but that he had not sufficient assets to pay it in full if the moneys in his hands were to be divided up *pro rata* among all the creditors of the estate. The surrogate, by his order made January 31, 1863, ordered the administrator to pay the judgment in full, viz. $2000, with interest from February 27, 1862, and $25 costs of the proceedings before the surrogate. Abraham G. Thompson died October 29, 1851. Henry Shelden became sole executor of his will. Mr. Cowles performed professional services as an attorney and counsellor at law for Sheldon in his capacity as executor, and for the benefit of the estate which he represented, during 1857, 1858, and 1859. Sheldon died December 19, 1859. The present administrator with the will annexed was appointed April 20, 1860. Cowles subsequently brought suit against the present administrator with the will annexed, and recovered the judgment be-

fore mentioned. The prayer of the petition to the surrogate was in the alternative, namely, that the administrator be ordered to pay the judgment from the funds in his hands belonging to the estate, *or* that an execution issue on the judgment to collect its amount. The surrogate did not direct an execution to issue on the judgment, but made a direct order that the administrator pay to Cowles the amount of the judgment. The decision of the surrogate, as appears by his opinion, proceeded upon the ground that § 58 of art. 3, tit. 3, chap. 6, part 2, of the Revised Statutes as amended by chap. 160 of the Laws of 1849, provides that in all cases such allowance shall be made to executors and administrators on the settlement of their accounts, "for their actual and necessary expenses as shall appear just and reasonable," and that, in the present case, the supreme court had declared, by the judgment in favor of Cowles, that $2000 was a just and reasonable allowance for the actual and necessary expense of counsel fees, and that that amount was due to Cowles by the estate. This being so, he decided that the remedy of Cowles was a decree by the surrogate that the administrator pay the amount of the judgment out of the estate, with interest and costs, upon which decree an execution could issue.

*Blatchford, Seward & Griswold,* for the appellant. I. The only authority to be found in the statute for the application made to the surrogate by Mr. Cowles, is found in 2 *R. S.* 116, §§ 19, 20. Those sections are as follows:

" § 19. Where a creditor shall have obtained a judgment against any executor or administrator, after a trial at law upon the merits, he may at any time thereafter apply to the surrogate having jurisdiction, for an order against such executor or administrator, to show cause why an execution on such judgment should not be issued.

§ 20. The surrogate to whom such application may be made, shall issue a citation, requiring the executor or administrator complained of, at a certain time and place therein to

be named, to appear and account before him; and if, upon
such accounting, it shall appear that there are assets in the
hands of such executor or administrator, properly applicable
under the provisions of this chapter to the payment, in whole
or in part, of the judgment so obtained, the surrogate shall
make an order, that execution be issued for the amount so
applicable."

It appearing by the account rendered by the administrator
that he has in his hands assets sufficient to pay the amount
of Cowles' judgment, the questions arise, (1.) Whether the
surrogate has any jurisdiction or authority whatever to make
any order for the issuing of an execution in the premises, or
any order for the payment of any amount whatever; and
(2.) Whether, if he has such authority, Cowles is enti-
tled to have that judgment paid *in full* out of such assets, or
whether such judgment is only to be paid *pro rata* with the
other debts against the estate, it appearing by the account
that the assets of the estate are insufficient to pay in full all
the debts against the estate.

Ordinarily it is a matter of no consequence to an adminis-
trator whether all the debts against the estate he administers
be paid pro rata, or whether one of such debts be paid in full
and the rest of them pro rata; and, ordinarily, all the inter-
est the administrator has in any such question is, that he be
protected by a proper order of the surrogate in paying any
creditor in full to the exclusion of others. In the present
case, however, the administrator of Abraham G. Thompson
has a personal interest in the question. He is also adminis-
trator with the will annexed of his father, Edward G. Thomp-
son, and a beneficiary under his will.

The language of section 20 of the statute, before referred
to, is this: "If, upon such accounting, it shall appear that
there are assets in the hands of such executor or administra-
tor, properly applicable under the provisions of this chapter
to the payment, in whole or in part, of the judgment so ob-
tained, the surrogate shall make an order that execution be

issued for the amount so applicable." This is the sole authority for any action of the surrogate in the premises. He has no power, other than what is conferred upon him by this section 20, to order the issuing of an execution in the premises, or to order the payment of Cowles' judgment. And he can only issue such an execution, provided the assets in the administrator's hands are properly applicable under the provisions of chap. 6, part 2, of the revised statutes, to the payment, in whole or in part, of the judgment in question. If he has no authority to issue an execution in a case like the present one, *a fortiori* he cannot order the judgment to be paid by an order which, when docketed in the county clerk's office, becomes a decree on which an execution can issue. This is what he has done, while he impliedly admits that he could not issue an execution directly on Cowles' judgment. Now, search will be made in vain in such chapter 6 for any authority on the part of the administrator to pay this debt of Cowles in full, provided the assets of the estate of Abraham G. Thompson are insufficient to pay in full all the debts against him, or for any authority on the part of the surrogate to order the administrator to make such payment in full, or to issue any execution for any amount, much less for the full amount of Judge Cowles' debt. On the contrary, certain provisions in chapter 6 expressly forbid the payment of this debt of Cowles under the circumstances, in full or otherwise than pro rata with the other debts against the estate. It is provided as follows by 2 *R. S.* 87, §§ 27 *and* 28:

" § 27. Every executor and administrator shall proceed with diligence to pay the debts of the deceased, and shall pay the same according to the following order of classes: 1. Debts entitled to a preference, under the laws of the United States; 2. Taxes assessed upon the estate of the deceased, previous to his death; 3. Judgments docketed, and decrees enrolled, *against the deceased,* according to the priority thereof, respectively; 4. All recognizances, bonds, sealed instruments, notes, bills, and unliquidated demands and accounts.

§ 28. No preference shall be given, in the payment of any debt, over other debts of the same class, except those specified in the third class; nor shall a debt due and payable, be entitled to preference over debts not due; *nor shall* the commencement of a suit for the recovery of any debt, *or the obtaining a judgment thereon against the executor or administrator, entitle such debt to any preference over others of the same class.*"

The sections just quoted have reference solely to the payment of *the debts of the deceased.* In the present case the debt of Mr. Cowles was *not a debt of the deceased.* Moreover, under the provisions of the sections just quoted, it clearly appears that no judgments recovered for any debts of the deceased are entitled to be paid by an administrator in full, where there is a deficiency of assets to pay in full all the debts against the estate, *except judgments against the deceased.* Such judgments are to be paid in full and according to their priority in time of recovery; but they must be judgments for *debts of the deceased.* And section 28 contains an express direction that the obtaining a judgment against an administrator for *any* debt, shall not entitle such debt to any preference over others of the same class. But, as remarked before, sections 27 and 28 have reference solely to *debts of the deceased,* and *judgments for debts of the deceased.* Now, in the light of these §§ 27 and 28, (2 *R. S.* 87,) it is perfectly clear that where §§ 19 and 20, (*Id.* 116,) before quoted, speak of a judgment against an executor or administrator, they mean exclusively a judgment against him *for a debt of the deceased,* and not a judgment for a debt created wholly after the death of the deceased, and on the personal procurement of the executor or administrator. In the present case the services rendered by Mr. Cowles, for which he obtained his judgment, were services rendered by him, not on the retainer of the deceased, but wholly after the death of the deceased, and on the retainer of Henry Sheldon. Henry Sheldon was, to be sure, the executor of Abraham G. Thompson, and

the services rendered by Mr. Cowles upon the retainer were, to be sure, rendered in respect of matters involving the estate of Abraham G. Thompson. But such services might as well have been rendered by Mr. Cowles, on the procurement and retainer of Henry Sheldon, in and about any other matter as well as in and about the estate of Abraham G. Thompson. The rendering of such services, under such circumstances, did not make the estate of Abraham G. Thompson in any manner liable to Mr. Cowles. It made Henry Sheldon individually liable to Mr. Cowles. If Mr. Cowles failed, during the lifetime of Henry Sheldon, to obtain payment from Henry Sheldon, he has his remedy against the executors of Henry Sheldon. The difficulty in the present case is, that sections 19 and 20 of 2 *R. S.* 116, which are the only sections under which the surrogate has any authority to act in the premises, have reference manifestly only to judgments against an administrator *for debts of the deceased,* because "*the provisions of this chapter,*" referred to in section 20, have reference solely *to debts of deceased,* and to judgments against an administrator *for debts of the deceased.* This we have shown, by citing the language of 2 *R. S.* 87, §§ 27, 28. Moreover, all the provisions of article 2, title 3, of chapter 6, of part 2, of the Revised Statutes, which article relates to the duties of administrators in the payment of debts, and in which article §§ 27 and 28 are found, have reference solely to *debts of the deceased.* The surrogate seems to concur in the view we take to a certain extent, for he says, in his opinion, "In order to make the judgment a 'debt' against the estate, within the meaning of the statute, so that it must abate with the other debts due the estate in consequence of the deficiency of assets, it would be necessary that the services for which the judgment has been obtained, should have been rendered to the testator in his lifetime." But the surrogate then concludes by directing the judgment to be paid in full, forgetting that he has no authority to make such an order, unless the debt in question was a debt against the deceased in his lifetime—

in other words, a debt "of the deceased," within the language of 2 *R. S.* 87, § 27.

II. The only other provisions in chapter 6 of part 2 of the Revised Statutes, which can be cited as having any bearing upon the question involved here, are section 54, article 3, title 3, chapter 6, part 2, (2 *R. S.* 92, § 54,) and the part before quoted from section 58 of the same article, (*Id.* 93, § 58). Section 54 is as follows : " § 54. In rendering such account, every executor or administrator shall produce vouchers for all debts and legacies paid, and for all funeral charges and just necessary expenses, which vouchers shall be deposited and remain with the surrogate ; and such executor or administrator may be examined on oath touching such payments, and also touching any property or effects of the deceased which have come to his hands, and the disposition thereof." Section 58 says that, in settling the accounts of executors and administrators, "such allowance shall be made for their actual and necessary expenses as shall appear just and reasonable." But these sections have no bearing on the question here. They mean only that an administrator, in rendering his account, shall produce vouchers for, and be allowed all the just, *actual*, and necessary expenses *which he has paid*. Now Edward G. Thompson certainly has not paid this claim of Mr. Cowles, nor could it be expected that he would pay that, or any other claim not incurred by himself. He pays the expenses which he himself incurs. For those expenses he is personally liable to the parties with whom he incurs them, even though he should fail to have them allowed in his accounts with the estate. And those parties must regard him as their debtor, and have no legal claim against the estate. So here, Cowles had for his debtor Henry Sheldon, and never had any legal claim against Edward G. Thompson individually, or against the estate of Abraham G. Thompson. He could have recovered the amount of his debt from Henry Sheldon individually, and have made Henry Sheldon pay it, even though Henry Sheldon should never have obtained its

allowance as a credit in his accounts with the estate of Abraham G. Thompson. And Cowles' claim remains good against the estate of Henry Sheldon, and he has no claim against the estate of Abraham G. Thompson. The fact that Mr. Cowles has his judgment against Thompson, as administrator, is of no consequence. The only question is, whether that judgment is to be paid in full, and execution to be issued for its full amount, against the assets of the estate of Abraham G. Thompson. The theory on which the surrogate acted seems to have been that, as the payment of Cowles' judgment, if made in full by the administrator, would be allowed to him in his accounts with the estate, therefore, the surrogate had a right to, and ought to direct the judgment to be paid in full out of the funds of the estate. This is an assumption of power on the part of the surrogate. The statute confers no such authority upon him. He must find a warrant for his action in the statute, and cannot act upon general principles of equity. Besides, the authority granted to the surrogate by sections 54 and 58 of article 3, to make an allowance to executors and administrators, on the settlement of their accounts, for just, actual and necessary expenses, gives the surrogate no authority to issue an order compelling an administrator *to pay* such expenses as the surrogate may decide to be just, actual and necessary. The authority of the surrogate only extends to allow the administrator, in his accounts, such expenses *after he has paid them*.

The result of the whole matter is:

1st. The statute on which the application to the surrogate was founded has reference solely *to debts due by the deceased*.

2d. The surrogate has, under the statute, no jurisdiction whatever to order the payment in full of any judgment, except a judgment *for a debt due by the deceased*.

3d. Even if Mr. Cowles' debt were a debt due by the deceased, inasmuch as a judgment for it was not obtained

against the deceased in his lifetime, a judgment for it against the administrator would not entitle it to a preference in payment where there is a deficiency in the assets of the estate to pay all its debts in full.

4th. The surrogate has no power to order an administrator to pay any amount as expenses of the estate. He can only allow the expenses, after they have been paid.

*W. M. Evarts*, for the respondent. The judgment recovered establishes, beyond dispute, on this application, or in any accounting, before the surrogate, two things: (1.) That the plaintiff is entitled for the services rendered and sued for, to the sum of $2000. (2.) That this demand is to be collected out of the estate of Abraham G. Thompson, *according to law*.

The questions, then, of the amount of the plaintiff's claim, and that it is to be paid by the estate of Abraham G. Thompson, have been adjudicated by the supreme court, and are not open to consideration here. (*Le Roy* v. *Bayard*, 3 *Bradf.* 228.) The only subject of discussion then, is what is the plaintiff's legal method of enforcing his judgment? All the suggestions in the brief of the administrator's counsel, that the petitioner had a claim for the services rendered to Thompson's estate upon the retainer of Sheldon, as executor, against *Sheldon, personally*, should have been urged (as they probably were but without success,) in the suit in the supreme court. The administrator's view, as presented by his counsel, of the petitioner's means of enforcing his judgment, is, that he has *none whatever*. His proposition is, (1.) That the surrogate cannot allow execution to go on. *this* judgment, because, he says, the sections of the statute attributing this power and duty to the surrogate make its exercise applicable only to judgments on debts of the decedent recovered against his representatives. (2.) That, though, *if* the administrator *paid* this judgment, the payment would be allowed to him as a payment of a charge upon the estate, yet, by refusing to pay it, he can defeat the creditor's right to the collection of his judgment, whether by

In the matter of the estate of Thompson.

decree of the surrogate, or by execution on the judgment. Before the system of our statutes giving the surrogate the ascertainment of assets, and their appropriation to and distribution among creditors of the estate (whether such creditors were of the decedent or of the executor or administrator in his representative capacity) a creditor obtained his judgment at law against the executor or administrator unless a defense of an entire or partial deficiency of assets was made *in the suit*, before this judgment and execution was issued against the property of the estate, and if no means to satisfy the execution from such property was found, a suit upon the judgment, alleging a *devastavit* was brought against the executor or administrator *personally*, and in this latter action the former judgment was *conclusive evidence* of the debt against the estate and of assets to pay it, and proof that the judgment was uncollectable from the estate was proof of the *devastavit*, and the creditor had judgment against the executor or administrator personally, and collected it from *his* property. (*Butler* v. *Hempstead's Adm'rs*, 18 *Wend.* 667.) By the effect, however, of the statutes regulating the accounting before surrogates, the pertinency and importance of the question of *assets* in suits against executors or administrators are ended, and the only issues are of the validity and amount of the creditor's claim. (*S. C.* 18 *Wend.* 667. *Fox* v. *Backenstose*, 12 *id.* 542.) Accordingly the statute provides that no " execution shall issue upon a judgment against an executor or administrator until an account of his administration shall have been rendered and settled, *or* unless on an order of the surrogate who appointed him. (2 *R. S.* 88, § 32.) This section manifestly makes the power and jurisdiction of the surrogate to relieve from the restraint on issuing execution co-extensive with the restraint itself, and upon the surrogate's ascertaining that the judgment presented to him judicially establishes a debt to be collected out of the estate. There is but one further question for his consideration, viz: Whether there are assets of the estate AGAINST WHICH *the payment of*

*the judgment* by the executor or administrator would be a proper charge.   If this be so, it is the *duty* of the executor or administrator to pay it, and the *right* of the judgment creditor to receive it.   The surrogate then, necessarily, either allows execution peremptorily or orders the payment of the judgment by the executor or administrator within a period fixed, and execution *nisi*.   If the surrogate's examination shows him that there are *no assets*, or that the payment of the judgment *pro rata* with some other liabilities of the estate, is the only duty of the executor or administrator, and the only right of the judgment creditor, then the surrogate refuses to allow execution, or allows it for the *pro rata* payment as it may be.

Now it appears, (1.) That this claim, both in respect to its validity and amount, has been conclusively established (by the judgment) as a charge against the estate and to be collected out of it, provided there are assets out of which it is entitled to be paid in full, and if not, in full to such extent as the assets against which it is chargeable will satisfy it. (2.) That it is of a *nature* which entitles it to be paid *in full*, as a charge upon the estate for its administration before *any* debts of the decedent can come upon the assets.   (3.) It appears that there are assets sufficient to pay all this and all claims of the same nature in full, so that no question of *pro rata* among them arises.   (4.) It is manifest (and is conceded by the argument of the counsel for the administrator) that *if* the administrator pays it, and *if* it is a valid claim in substance and in amount, it will be allowed him as an *expense* of the estate, and not be put on a *pro rata* footing with the debts of the decedent.   Indeed the whole argument of the counsel rests upon the fact that it is *not* a debt of the decedent.   But, as before said, the *judgment* establishes the claim as a valid one both in substance and amount; so that it stands thus: *If* the administrator pays it in full, it is a just charge against the assets of the estate in the administrator's account.

In the matter of the estate of Thompson.

But this result is the very thing, and the only thing, that needed to be demonstrated, viz: That there were assets which it was the *creditor's right* to have applied to the satisfaction of his claim.    For no payment can be a proper charge upon the assets in the administrator's account in his favor, unless it was *rightly* made, and it could not be *rightly* made unless the creditor had a *right* to its payment.

It remains only to consider a technical construction of a subsequent section of the same chapter of the statutes, which the administrator's counsel raised as an objection to the jurisdiction of the surrogate in respect of an issue of execution on this judgment.    The section (32, *p.* 38) already quoted, having restrained a creditor having judgment against an executor or administrator from issuing an execution thereon, but, by the surrogate's permission, subsequent sections of the same chapter provide the manner for the creditor's application, and the manner of the surrogate's exercise of his jurisdiction. (2 *R. S.* 116, §§ 19, 20.)    Section 19 gives the right to *every* creditor having a judgment against an executor or administrator to apply to the surrogate for an order, &c.    This shows that the right to apply for relief from the restraint on issuing execution is co-extensive with the restraint.    It is not disputed that the petitioner comes within the privilege *of this* section.    Section 20 provides for a citation of the executor or administrator, and an accounting in respect of assets, and proceeds as follows : "If upon such accounting it shall appear that there are assets in the hands of such executor or administrator, *properly applicable under the provisions of this chapter to the payment, in whole or in part, of the judgment so obtained,* the surrogate SHALL make an order that the execution be issued for the amount so applicable."    The *chapter* thus referred to as the resort to determine whether an *application* of assets by the executor or administrator to the payment of the judgment would be *proper,* is entitled, "Of wills and testaments ; of the distribution of the estates of intestates ; *and of the rights, powers and duties of* executors

and administrators." It includes, besides many other things within its purview, *all* matters which form the subject of accounting by an executor or administrator before the surrogate, whether those matters arise in the distribution of the estate, and the payment of the debts of a decedent, or in the care and management of the estate and the conduct of the administration. Accordingly, whenever there are assets whose *application* by the executor or administrator to a judgment against the estate would be *proper*, and so a *proper* allowance to an executor or administrator making the same, in his accountings under that chapter, it is manifest that the assets so applied were so "*properly applicable under* the provisions of this chapter." For the application of the assets would not be allowed in the executor's or administrator's accounts, unless they were "properly applicable" in the manner they were applied; and if "*properly applicable*" in the manner they were applied, they must have been so applicable "under the provisions of this chapter;" for the chapter includes the whole regulation of "the *rights, powers* and *duties* of executors and administrators." The administrator's counsel has found no case drawing or hinting at the novel distinction that only judgments for debts of *the decedent* are within the purview of the statute, when the statute itself applies the jurisdiction of the surrogate to "a judgment against an executor or administrator." The plain purpose as well as language of the statute rejects any such distinction as insensible. This purpose is to suppress the competition between creditors for priority of judgment, and to remove from litigation in suits against executors and administrators the question of assets or no assets, and leave the enforcement of any judgments obtained out of assets to the ascertainment of assets or no assets before the surrogate. Manifestly, this purpose requires that *every* judgment *against* an executor or administrator should be dependent for its collection *only* on the question of the existence of assets out of which *it may lawfully be paid*. For if there are assets out of which it may lawfully be paid

In the matter of the estate of Thompson.

it must be collected *in invitum* if the executor or administrator refuses to make the payment. But the argument of counsel produces the absurd result of an absolute refusal of enforcement to a creditor's rights established by judgment in all cases where the judgment is for a charge on the estate for its administration. But the exercise of this jurisdiction on judgments against an executor or administrator, irrespective of whether it was for a debt of decedent or not, is familiar and unquestionable. (*Dudley* v *Griswold*, 2 *Bradf.* 24.) In that case the judgment was against the executor for costs, in a suit instituted by him. This was manifestly *not a debt of the testator*, but by the judgment it was to be collected out of the estate, and the surrogate allowed execution. No question came up as to collection in full or *pro rata*, as no suggestion of want of assets in any aspect was made. But no one will contend that any other rule will apply for the *enforcement* of a judgment, than for its voluntary payment by an executor or administrator. Whenever a payment in full by him is justifiably chargeable and allowable against an estate, then it must be enforced in full if he refuses the just voluntary payment. The counsel for the administrator thought it useful in his argument below to display to the court the peculiar position of his client in resisting the payment of this just and adjudicated charge against the administration of the estate. In substance, he says, the ordinary protection which a creditor has, that an executor or administrator on whose retainer professional services have been rendered to an estate, will pay for the services out of the estate, fails you, because Sheldon, who is dead, employed you, and I, his successor, have no notion to do justice from any fear of being obliged to pay from my own pocket, if the estate does not satisfy you. Besides, you cannot rely upon my doing my simple duty as a mere representative of the estate, because I am also a creditor of the decedent, and my *pro rata* share of the estate which your professional services protected and saved, will be dimin-

ished by the estate's paying for those services. You cannot expect me to do my duty, as administrator, at the expense of my interest as a creditor. You cannot expect me to diminish the fund in which I participate, by paying therefrom the cost of acquiring or protecting it. It cannot be necessary to comment upon this peculiar position of the administrator farther than to say that it tends to explain much more than to justify the very ingenious effort to render this judgment uncollectable. If the administrator merely desires to have, in advance, the surrogate's allowance of this judgment as a just expense in the administration account, hereafter to be rendered, his defense is wholly unnecessary, for the judgment is his all-sufficient voucher for its payment. If he merely wishes an ascertainment that the estate is sufficient to pay all *expenses* of the administration of the estate in full, the defense was unnecessary, for the account produced by the administrator shows such sufficiency; and an extensive margin beyond. But if there was any technical objection to the allowance of an execution on the judgment, none can be made to the surrogate's direction of its payment by the administrator, and its allowance in his accounts. This jurisdiction is undisputed, and the debt being uncontested, and the state of assets clear, the surrogate's order for its payment was manifestly correct.

Upon the whole, then, the order appealed from should be affirmed; or, if the appellate court should consider that the surrogate's jurisdiction in the premises is more properly exercised by ordering an execution upon the judgment, the order appealed from should be so modified. It would, in case of such modification, direct that the administrator pay the amount of the judgment and interest, by a day to be named, or that the plaintiff have execution upon his judgment.

LEONARD, J. The surrogate has ordered the administrator of the estate of Abraham G. Thompson, deceased, to pay to Edward P. Cowles the amount of a judgment recovered by

In the matter of the estate of Thompson.

him in the supreme court against the said administrator, after a trial at law on the merits, for services rendered by him as proctor and counsel for Henry Sheldon, the former executor of the said estate, in the administration thereof, amounting to two thousand dollars.

This recovery adjudges that the services in question constitute actual, necessary, just and reasonable expenses of the administration which must be borne by the estate.

It is provided by the revised statutes, part 2, chap. 6, title 3, article 3, section 58, (3 *R. S.* 179, § 64, *5th ed.*) that such expenses shall be allowed on the settlement of the account of an executor or administrator. The administrator or executor is to be allowed in his account for his services and expenses, before all other claims.

Title 5, § 19, of the same chapter, authorizes a creditor having a judgment against an executor or administrator, after a trial at law upon the merits, to obtain from the surrogate an order against such executor or administrator to show cause why an execution should not issue on such judgment. The next section directs the surrogate to issue a citation, requiring the executor or administrator complained of, to appear and account before him; and if, upon such accounting, it shall appear that there are assets in the hands of such executor or administrator, *properly applicable, under the provisions of chapter six,* to the payment of the judgment, the surrogate is further directed to make an order that execution be issued for the amount so applicable. These provisions appear to be distinct and easily comprehended. There is no difference in respect to the authority conferred upon the surrogate under the two sections last referred to, whether the judgment was recovered for a debt of the deceased testator or intestate, or for a debt contracted by the executor or administrator, for actual, necessary, just and reasonable expenses of the administration.

It is insisted by the learned and ingenious counsel for the administrator, that the surrogate is not authorized to direct

the payment of these expenses out of the estate, and that the estate does not become chargeable therefor in such manner that the assets in his hands are properly applicable to the payment thereof, under the provisions of the sixth chapter of the statutes above referred to, until the expenses have been actually paid by the administrator.

This position is fallacious. It cannot be admitted that an administrator can hold a fund in his hands to which he is lawfully entitled to resort for the payment of the just and necessary expenses of the administration, and refuse at his pleasure so to apply the fund as to set the creditor at defiance.

It may be conceded, as the appellants' counsel insist, that the administrator who employs the services of counsel in the necessary defense or collection of his trust is personally liable for the payment thereof; but the estate is also liable, and it is not the privilege of the administrator to decide whether he shall be made liable in his personal or representative capacity. That election is to be made by the creditor, if the right of election exists, and not by the debtor. In whichever capacity the administrator is required or compelled to pay the just and necessary expenses of his trust, he is entitled to have the amount refunded from the estate and allowed by the surrogate on the settlement of his account.

The learned counsel for the appellant clearly errs in urging that the authority of the surrogate under sections 19 and 20, above mentioned, refers only to judgments recovered for debts incurred by the deceased. The provisions of chapter 6, in which those sections are embraced, relate to and provide for the payment of the services and expenses of the executor or administrator, just as distinctly as for the debts of the deceased, and a judgment for such expenses is clearly within the provisions of the sections last mentioned.

The order of the surrogate should be affirmed with costs.

In my opinion it is the duty of the surrogate to proceed

Trevor *v.* Wood.

farther than he has done by his order, if the creditor shall so require, and to direct that an execution issue.

CLERKE, J. concurred.

SUTHERLAND, J. dissented.

Order affirmed.

[NEW YORK GENERAL TERM, February 1, 1864. *Leonard, Sutherland* and *Clerke,* Justices.]