## FERRIN *vs.* MYRICK, administrator, &c.

An executor or administrator, in this state, as a trustee of the estate, may create a charge upon it for expenses attending his administration, which he is authorized to incur in the proper discharge of his trust.

Thus he may render the estate liable by contracting for suitable head stones to be placed at the grave of the deceased, where there are sufficient assets properly applicable to that purpose.

An executor or administrator by ordering such articles, as a part of the funeral expenses, makes himself personally liable for them; but if he pays for them himself, the estate is liable over to him for the amount.

APPEAL by the plaintiff from an order sustaining a demurrer to the complaint. The complaint alleges the appointment, in March, 1865, of Jacob Hartman as administrator of the estate of Sanford Hartman, deceased, his removal in December, 1866, and the appointment of Myrick in his place; that in May, 1865, said Jacob, as such administrator, contracted with the plaintiff to manufacture and deliver a set of grave stones, for the price of $140, to be ready by September following. Said grave stones being

Ferrin *v.* Myrick.

purchased to be placed at the grave of said deceased, and being suitable to his rank and station in life, and to the circumstances of his estate, and being reasonable. That the plaintiff thereupon performed his part of the agreement, but said Jacob and the defendant have refused to receive or pay for the stones, except that Jacob, as administrator, paid $40 of the price in February, 1866. That the defendant has sufficient assets applicable to the payment of this claim.

The defendant demurred to the complaint because it did not state facts sufficient to constitute a cause of action. The following grounds of demurrer were alleged:

" 1. The said complaint does not show that the defendant was appointed administrator of the estate of Sanford Hartman, deceased, by any competent court having jurisdiction.

2. The complaint does not show that the grave stones mentioned therein were suitable to the rank and condition of Sanford Hartman, deceased, or the circumstances of his estate.

2. There is no privity of contract between the plaintiff and defendant to pay for the said grave stones."

*M. H. Merwin,* for the appellant. I. Suitable funeral expenses, (including monument,) are in law, a charge upon the estate, and the acts of an administrator in relation thereto, within the scope of his duty and authority, bind the estate. Such charge, as it in law exists, or as it may be fixed or determined by the authorized acts of the administrator, can be enforced, the same as any other liability, against the estate. (*Hapgood* v. *Houghton,* 10 *Pick.* 154. *Matter of Thompson,* 41 *Barb.* 237. *Chouteau* v. *Suydam,* 21 *N. Y. Rep.* 179. *Howard* v. *Powers,* 6 *Ohio R.* 92, *in n.* 3 *M. & W.* 356. *Parker* v. *Lewis,* 2 *Devereaux,* 21, *in n.* 3 *Y. & J.* 38. *Rogers* v. *Price, Ex.* 3 *Y. & J.* 28. *Chapple* v. *Cooper,* 13 *M. & W.* 252.) 1. It is well settled, and was

conceded in the court below, that it is the duty of an administrator to bury his intestate, to pay the funeral expenses including the expenses of a grave stone suitable to the condition in life, and circumstances of the deceased; that the estate is chargeable therewith, and that they are to be paid in preference to all other charges thereon. The burial of the deceased is the first duty of an executor or administrator. It may be performed by an executor before probate. (*Toll.* 24.) Ordering a funeral and appropriating a reasonable sum to that purpose, does not make a party an executor *de .son tort.* (4 *M. & W.* 378. 3 *Y. & J.* 38, *n. a, and authorities cited.*) The administrator, on his final settlement, is not only permitted, but required, to produce vouchers for all funeral charges. (3 *R. S. 5th ed.* 179, § 60. *Dayton,* 313.) "Funeral expenses," says Lord Coke, (3 *Inst.* 202,) "are to be allowed of the goods of the deceased before any other debt or duty whatsoever." Such expenses are a *quasi* lien. 2. The administrator, Jacob Hartman, when he made the contract with the plaintiff, was acting strictly within his duty as administrator, and made it as such. He simply carried out, to the extent of making definite and certain, a liability or duty imposed by law. He did not assume to charge himself personally; neither did the plaintiff so charge him. The credit was given to the estate. It was within the province of the administrator to determine, in the first instance, what was suitable and reasonable, and that being done, the liability of the estate was fixed. Just as an estate is bound on an account stated by an administrator, (*Holmes* v. *D'Camp,* 1 *John.* 34,) or as it is within the power of an administrator to promise so as to save the statute of limitation. (*Whitaker* v. *Whitaker, executor,* 6 *John.* 112.) *Chouteau* v. *Suydam, administrator,* (21 *N. Y. Rep.* 179,) was an action for an accounting, based on a written contract of compromise made by a deceased executor prior to the appointment of the defendant, and the point was raised that the

executor was only personally bound. Held that the contract was intended to be, and was in his representative capacity, within the scope of his authority, and his successor and the estate was bound. (*See pp.* 182, 183.) 3. But it is said to have been decided that an action will not lie, for funeral expenses, against the administrators, as such; in other words, that the estate, though bound, cannot be reached. As to the English cases, *Tugwell* v. *Heyman, executor,* (3 *Camp.* 298,) and *Rogers* v. *Price, ex.* (3 *Y. & J.* 28, *decided in* 1829,) are the earliest English cases referred to on this subject. They were both actions for funeral expenses, and against executors as such, and in both the defendants were held liable, there being assets. In *Corner* v. *Shew, ex.* (3 *M. & W.* 350,) decided in January, 1838, these cases were discussed, and while they were not overruled, but the counsel for the defendant admitted, (*p.* 351,) they might stand consistent with his position, still the court said, that those cases only decided that the law implies a contract on the part of the executor personally, and not in his representative capacity, to pay funeral expenses. The declaration contained four counts, first, for goods sold to the defendant, as executor, at his request; second, for work in like form; third, for money paid for the use of the defendant; and, fourth, on account stated. The court admitted the third count to be good, but were of opinion that the first two counts were necessarily for debts due from the defendant, in his own right, and hence, a misjoinder. Whether any of the counts were for funeral expenses don't appear, and the liability of an estate for such, was not discussed. In *Green* v. *Salmon,* (35 *E. C. L.* 404,) decided in Queen's Bench, in June, 1838, it was held that in an action by an undertaker for funeral expenses, against a person not an executor, a residuary legatee is a competent witness for the plaintiff. For, although a person, other than an executor, may have rendered himself liable to the undertaker, the estate is ultimately answer-

able for so much of the cost as an executor might reason-
ably pay and no more; and the witness, therefore, has no
disqualifying interest; and Lord Denman, in giving judg-
ment, says: "The question was whether he was not inter-
ested to relieve the residue by charging the defendant?
we think not; for the estate must, at all events, pay the
reasonable expenses of the funeral, and can, in no event, be
liable beyond them," and the case of *Rogers* v. *Price*, is
recognized on the argument, and the common law liability
of executors referred to, and any doctrine that an estate is
discharged when somebody else is personally liable, is ex-
pressly repudiated. In *Brice* v. *Wilson*, (28 *E. C. L.* 407;
3 *N. & M.* 512,) decided in King's Bench in 1834, the
common law liability of an executor, as such, to pay rea-
sonable funeral expenses, is distinctly recognized, and the
counsel on both sides recognize *Rogers* v. *Price*, as author-
ity. In *Ashby* v. *Ashby, ex'r* (14 *E. C. L.* 77; 7 *B. & C.*
444,) decided in King's Bench in 1827, the declaration had
three counts: 1st, for money paid for the use of the de-
fendants, as executors, at their request; 2d, for money had
and received; 3d, on account stated, demurrer for mis-
joinder. Held that the 1st and 3d counts could be joined,
and judgment *de bonis testatoris;* but the second count was
for a personal charge, not within the scope of the duty of
an executor. Says Bayley, J. in discussing the first count:
"There may be cases in which the creditor may be entitled,
at his option, either to sue the party in his personal or
representative character, and when, as in this case, he
makes his election to charge the defendants in the latter
character, if the right stated in such count would be a
right binding the assets of the testator, it would be very
reasonable to say they might be joined. * * I think the
plaintiff, having paid the money to the use of the defend-
ants, as executors, has the same right that, before such
payment, belonged to the person to whom it was made,
and, consequently, that he, the plaintiff, may charge the

assets of the testator.  *  *  A plaintiff, in many instances, may have an advantage in proceeding against the assets, rather than against the executor personally.  The executor, in his individual capa city, may be insolvent; in his character as executor, he may have assets adequate to answer any claim, and when the money has been paid to his use, as executor, justice requires that the person who has made that payment should have the privilege of looking to the fund which the executor has in that character," *Chapple* v. *Cooper*, (13 *M. & W.* 252,) decided in Exchequer, 1844, was an action against an infant widow on her promise to pay the funeral expenses of her deceased husband.  Held that funeral expenses are regarded in the law as a necessary for the deceased.  Says Alderson, B.: " There are many authorities which lay it down that decent Christian burial is a part of man's own rights, and we think it no great extension of the rule to say, that it may be classed as a personal advantage and reasonably necessary to him."  If this be so, there is an implied promise by the deceased, while living, to pay for those services, when properly rendered to him after his death.  (*See note*, 3 *Y. & J.* 38.)  I find no later case than the above, and I submit upon this showing that the case of *Rogers* v. *Price*, is still good law in England, that there an estate is liable for funeral expenses, and a proper action will lie therefor against an administrator, as such.  4. Two cases in this state are said to be in point : *Myer* v. *Cole*, (12 *John.* 349,) and *Demott* v. *Field*, (7 *Cowen*, 58.)  The question in both these cases was whether there was a misjoinder of counts for the reason that the defendant was personally liable on *some*, and as executor on others, therefore, different judgments would be required.  The court decided that one of the counts in each case (being for goods, &c.) was so framed as to charge the defendant personally.  That the court meant to decide no more than this in the latter case, is shown by the re-

mark made in the opinion, that the defendant would be liable on the promise charged upon him, whether he had assets or not; and, in the other case, it is said that the defendant would be personally liable; for the promise is not alleged to have been made by them as executors, citing, among others, *Carter* v. *Phelps*, (8 *John.* 440,) where it is said, on page 441: " A count on a promise made by an executor or administrator, *as such*, and in which he is not charged as personally liable, may be joined with a count on a promise made by the intestate. The rule has become settled," citing several cases. The cases in 3d and 24th *Wend.* had no reference to a claim like the present, and only decided that claims against a defendant personally, could not be joined with those against him as administrator. In *Benjamin* v. *Taylor*, (12 *Barb.* 331,) the reason for the misjoinder is stated to be that in the one case the executor is liable only so far as he has assets, and in the other is liable personally, whether he has assets or not. According to this rule, inasmuch as want of assets would be a good plea to an action for funeral expenses, when a personal promise is not relied on, such an action would lie against an executor, as such. In none of these cases was the question before the court, whether an administrator, as such, by a proper form of action, could not be held. Such an action, when a personal promise was not counted or relied on, would not lie against the administrator personally, because: (1.) The liability depends on whether the administrator has assets. The want of them is a good plea, which would not be the case in a simply personal action. An administrator is liable, because he might debit the estate with those expenses, and he can only take from the estate that for which he is liable as administrator. The foundation of the liability is the law, and not the promise of the administrator. (2.) The judgment in such an action would be *de bonis testatoris*. This was distinctly held in *Hapgood* v. *Houghton*, (10 *Pick.* 154,) decided in 1830, in the

Ferrin v. Myrick.

Supreme Court of Massachusetts, on the question of mis-joinder, and the court say, (*p.* 156,) that the estate is just as liable for funeral expenses, as for necessary supplies in the lifetime. So in *Howard, adm'r* v. *Powers*, (6 *Ohio Rep*. 92,) it was held that an administrator may be sued, as such, in all cases where the assets of his intestate are, directly or indirectly, sought to be charged. The same was held in *Parker* v. *Lewis*, (2 *Devereux*, 21,) and the court say: "They form a charge upon the assets, independent of any promise by the executor or administrator, upon the ascertainment of the fact, that they are of that description and proper for the estate and degree of the deceased. The case of *Thompson*, (41 *Barb*. 237,) is strongly in point. A. G. Thompson died in 1851. Sheldon became executor. Cowles performed professional services, as attorney, for Sheldon, as executor, for the benefit of estate in 1857, 1858, 1859. Sheldon died in 1859, and E. G. Thompson was appointed administrator in 1860. Cowles sued him as administrator, in the Supreme Court, recovered judgment in 1862, and applied to the surrogate of New York for an order for the administrator to pay. The order was granted and the administrator appealed. The point was made that it was not a debt of the deceased, not against the estate, but against Sheldon personally, and the surrogate had no authority, under the statute, to order payment; in other words, not a claim against the estate. The order of the surrogate was affirmed, and the court, (Leonard, J.) say: "It cannot be admitted that an administrator can hold a fund in his hands to which he is lawfully entitled to resort for the payment of the just and necessary expenses of administration, and refuse, at his pleasure, so to apply the fund as to set the creditor at defiance. It may be conceded that the administrator, who employs the services of counsel in the necessary defense or collection of his trust, is personally liable for the payment thereof; but the estate is also liable, and it is not the privilege of the

Ferrin *v.* Myrick.

administrator to decide whether he shall be made liable in his personal or representative capacity. That election is to be made by the creditor, if the right of election exists, and not by the debtor, and the administrator is entitled to have the amount refunded." (*See also Dudley* v. *Griswold,* 2 *Bradf.* 24.) A like principle is followed when it is held that whenever money received will be assets, the executor may sue for it, and declare in his representative capacity. (28 *Barb.* 473. 1 *Wms. ex'rs,* 789. 26 *E. C. L.* 34. 25 *id.* 33.) The cases concede an action will lie for money paid at the request of the executor for use of the estate. (21 *N. Y. Rep.* 183.) The plaintiff has here furnished his property for the use of the estate, at the request of the executor. What difference is there in principle? If the position of the defendant is correct, there is no legal proceeding by which an undertaker can possibly reach the assets. If the administrator will not pay, he can only sue him and recover a personal judgment, which, if the administrator is insolvent, he cannot collect. He cannot reach the bail of the administrator, for he has no claim against him as such. If he goes into the surrogate's court, he has no standing, for his claim is disputed, and the surrogate can't try it; and besides he has no claim against the estate. He will thus be at the mercy of an administrator, who is disposed to cheat him. It is within the scope of the official duty of an administrator, to purchase a head-stone, and if it is reasonable and suitable, the estate is bound. If he promises to pay for it himself, and is sued on such promise, he is liable personally, and a personal judgment goes against him, and that is all the cases in 12 *Johnson* and 7 *Cowen* necessarily hold. The estate is not released by any such act: no case holds to that extent. The general understanding is, undoubtedly, as laid down by Dayton, (*p.* 313,) that although the administrator may be personally liable, still the estate is bound to the extent that the expenses are reasonable. Any other rule would work

great injustice, and should not be adopted. But, suppose it true, that an administrator, with assets, is liable personally, and not as administrator. It does not follow that the present action cannot be maintained. The defendant, *with assets*, stands in the same position as the first administrator, with assets. The personal liability attaches to whoever has the assets. In this way, the claim would follow the assets, and preserve its charge thereon,·which it has by law. Upon this theory, the words, *as administrator*, could be treated as surplusage, as they are in 12 *Johnson*, and the action be good against the defendant personally. The facts are stated in the complaint, and certainly entitle us to relief in some form. The demurrer admits the amount right, acknowledges assets, and the law says it is a charge. What more is necessary to entitle us to a judgment?

II. A fair construction of the allegation in the complaint, is that the defendant was appointed by the surrogate of Monroe county, who made the prior appointment, and whose jurisdiction is alleged. Be this as it may, the subsequent allegation that the defendant is now such administrator is sufficient. It is not necessary for a plaintiff to allege the time or manner of appointment of a defendant administrator. The matter is clearly within the defendant's knowledge, and the plaintiff may use a very general method of pleading. Every thing necessary to constitute the administratorship is included in this averment. (*Voorhies' Code*, 191 a, 8th ed. 3 *N. Y. Practice*, 9. 33 *Barb.* 527.)

*M. C. Finley*, for the respondent. I. The complaint does not show the appointment of the defendant as administrator of Sanford Hartman, deceased, by any court having jurisdiction. The language of the complaint is, "and the said Albert G. Myrick appointed in his place and stead, and said Albert is now such administrator." This does

not show by whom he was appointed. For aught that appears, the appointment may have been by the surrogate of some other state, or by a justice of the peace. The state or county in which an executor or administrator was appointed is a material and traversable averment and should be truly stated. (*Code of* 1867, § 142, *pp.* 188, 189. *Steph. Pl.* 288. *Rightmeyer* v. *Raymond*, 12 *Wend.* 51. *Morgan* v. *Lyon*, *Id.* 265. *Ring* v. *Roxborough*, 2 *Cr. & J.* 418.) The fact that the appointment is by a surrogate of this state, is material to be stated, because the courts of this state can take no notice of letters testamentary or of administration granted abroad, and they can only sue and be sued as such in the state in which they were appointed. (*Morrell* v. *Dickey*, 1 *John. Ch.* 156. *Williams* v. *Storrs*, 6 *id.* 353. *Campbell* v. *Torrey*, 7 *Cowen*, 68. *Vroom* v. *Van Horne*, 10 *Paige*, 550. *Vermilyea* v. *Beatty*, 6 *Barb.* 429, 431. *Smith* v. *Webb*, 5 *Abb.* 482. *Thomas* v. *Eddy*, 13 *id.* 22. *Gulick* v. *Gulick*, 21 *How.* 22. *Robbins* v. *Wells*, 26 *id.* 15.) There is no allegation that he was appointed by any surrogate in the state of New York, or that, being appointed by a sur-rogate in any other state, he has brought assets of the deceased into this state. It does not allege that this defendant was duly appointed. This question was decided in the case of *Forrest* v. *The Mayor of New York*, (13 *Abb. Pr.* 350.) In that case the complaint alleged that the plaintiffs were duly appointed and qualified by the surro-gate of the county of New York to act as the sole executors of Daniel Fanshaw, deceased. The demurrer was that the complaint did not state facts sufficient to constitute a cause of action, and that the plaintiffs had not legal capacity to sue. The demurrer was sustained. The allegation that "Jacob Hartman was appointed by the surrogate of the county of Monroe, who had jurisdiction for that purpose," does not help the plaintiff. It is not an allegation of juris-diction to appoint Albert G. Myrick. The complaint does not proceed upon the ground, or allege that the defendant

Ferrin *v.* Myrick.

has assumed to be or act as administrator so as to conclude him, but solely an allegation that he is administrator, &c. To sustain that, he should allege the acts he will be obliged to prove, to wit, the due and proper appointment by a proper court as such. (8 *How. Pr.* 428. 10 *Bosw.* 292, 301 *to* 305, *and cases cited on p.* 298. 16 *Abb. Pr.* 433, 442, 443. 28 *N. Y. Rep.* 454. 31 *id.* 9, 10, 15.)

II. The complaint does not allege any facts showing that the grave stones contracted for Jacob Hartman were suitable to the circumstances of the estate of Sanford Hartman, deceased, and to his rank and circumstances in life. The allegation in that respect is a mere " conclusion of law." The present administrator had a right to know and to controvert the facts in that behalf. (31 *N. Y. Rep.* 9; *vide pp.* 10 *and* 15.)

III. The defendant is not in any event liable to pay for the head stone contracted for by his predecessor, who has been removed. 1. There is no privity of contract between the plaintiff and defendant. This was not a contract made by Jacob Hartman, in his *representative capacity,* and which his successor became liable upon by virtue of the statute. (*See* 3 *R. S.* 5th *ed. p.* 165, § 59.) It was one of those funeral expenses upon which Jacob Hartman became liable individually and not in his representative character. (3d *ed. Dayton's Surrogate, pp.* 313, 314, 318, 482. 12 *John.* 349. *Williams on Executors,* 5th *ed.* 1621, 1624. *Id.* 3d *ed. sub.* 2, *p.* 829, *and* § 1, *note* 1522.) This is well settled. (*See, also, Dayton's Surrogate,* 285, 286; *Brice* v. *Wilson,* 8 *A. & E.* 349, *note c.* ; *S. C. and* 3 *Nev. & M..* 512; *Corner* v. *Show,* 3 *Mees. & Wels.* 350, 354, 355; *Tugwell* v. *Heyman,* 3 *Camp.* 298; *Rogers* v. *Price,* 3 *Young & Jer.* 28; *Hayter* v. *Moat,* 2 *Mees. & Welsb.* 56.) It was said by Patterson, J. in *Brice* v. *Wilson,* that it has been decided that an executor renders himself liable upon an implied promise at common law to pay reasonable expenses for the funeral of the testator, where no other person is liable on an express con-

tract, although he does not give orders for it. But there is no case which goes the length of deciding that if the funeral be ordered by another person without the knowledge of the executor to whom the credit is given, the executor is liable. It is also laid down that in an action against an executor for the funeral expenses of his testator, the judgment should not. be *de bonis testatoris*, but *de bonis propriis*. In this case, Jacob Hartman was and still is liable. individually upon this contract, but not Albert G. Myrick. 2. The liability on the part of the administrator to pay for head-stones as a part of the funeral expenses of deceased can never exist unless he has sufficient assets, so that the rights of creditors will not be affected thereby. This complaint contains no allegation showing that there are assets sufficient in the hands of the defendant to pay the debts of the deceased and to pay for these head-stones ; unless there is he could not be allowed in his account if he paid for them. The complaint is deficient as to allegations in this respect, as much so as was the one in the case of *Chambers* v. *Lewis*, (16 *Abb. Pr.* 433. *See pp.* 442, 443 ; 28 *N. Y. Rep.* 454; 31 *id.* 9, 10, 15.)

IV. There is no allegation in the complaint that the plaintiff has ever offered to deliver the head-stones in question to the defendant, or ever notified him that he was ready and willing to deliver the same to him.

*By the Court,* MORGAN, J. The complaint, I think, contains averments sufficient to show that the predecessor of the defendant undertook, in his character of administrator, to contract with the plaintiff for suitable head-stones to be placed at the grave of the deceased, not beyond what would have been allowed to him, under the statutes, in his final account before the surrogate, if he had paid for them before he had been removed from office. The price was $140, and he had paid but $40 when he was removed and the

defendant appointed to take his place. There is no question made but that the defendant has assets properly applicable to the payment of the balance, but it is alleged that he neglects and refuses to receive the stones, or to pay for them, although they were made according to the agreement with the first administrator, and were ready for delivery when called for.

The judge, at special term, while admitting that the contract was one which it was proper for the administrator to make, and that the expense of the head-stones was not beyond the rank or station in life of the deceased, came to the conclusion that no action would lie against the defendant, as administrator, to recover the balance of the purchase price.

Some ·of the authorities cited and commented upon, show that although funeral expenses, including a suitable monument for the deceased, are chargeable upon the estate of the deceased, the administrator who orders them is *personally* liable and *not in his representative capacity.* So when they are ordered by others and afterwards· approved by the administrator or executor. And in case of *necessary* funeral expenses, when there is no one personally liable, the undertaker may sue the administrator and recover them upon an *implied* assumpsit, provided he has assets. It would seem, however, from some of the cases cited, that when there is an express agreement by the administrator to pay, he makes himself liable, personally, and cannot be made liable *as administrator.* If this is the law in this state, then the only remedy of the plaintiff is to sue the first administrator. If he is insolvent, I know of no way under this state of the law by which the amount can be collected. If he is responsible and pays the judgment, then it is admitted in *Green* v. *Salmon,* (8 *Ad. & E.* 348;) *Myer* v. *Cole,* (12 *John.* 349;) *Demott* v. *Field,* (7 *Cowen,* 58;) as well as by other authorities cited, *that the estate would be liable over to him after such payment.*

This is a most extraordinary position, and yet it seems to be pretty well established by the authorities cited, although not without protest and objection by distinguished judges in other cases.

If the estate is *ultimately* liable, there is no reason why this claim should not be presented to the administrator in the first instance, and why, if he has funds, he should not be required to pay it out of the assets of the deceased. Under the Revised Statutes, the administrator cannot plead want of assets and thus escape the responsibility of a judgment. (*Parker's ex'rs* v. *Gainer's adm'rs*, 17 *Wend.* 559.) The only object of the suit is to establish the claim. After judgment, the plaintiff could not have an execution without the order of the surrogate, and then for only so much as was properly applicable to the payment of the plaintiff's claim. (*Id. Allen* v. *Bishop's ex'rs*, 25 *Wend.* 415, *and also* 18 *id.* 666; 12 *id.* 542.)

It was said by Savage, Ch. J. in *Dox* v. *Backenstos*, (12 *Wend.* 543,) that the jurisdiction of the surrogate has been extended and enlarged in respect to executors and administrators by the provisions of the Revised Statutes; and that they "have a new character and stand in different relations from what they formerly did to the creditors of the deceased persons with whose estates they are intrusted. They are now the *mere representatives* of the testator or intestate; *they are constituted trustees,* and the property in their hands is a fund to be disposed of for the benefit of creditors, and not liable, as it once was, to be dissipated by bills of costs, created by the anxiety of creditors to obtain the first judgment and thus secure the payment of their debts to the prejudice, perhaps, of others. Now a more equitable rule prevails; no preference is allowed among debts of the same class." In *Parker's ex'rs* v. *Gainer's adm'rs*, (17 *Wend.* 561,) Cowen, J. says: "The old system of preferential administration having been almost entirely subverted, all the pleadings and other parts of the ancient

Ferrin *v.* .Myrick.

superstructure in so far as it was raised for the protection of that system, have gone with it." And in *Butler* v. *Hemptead's adm'rs*, (18 *Wend.* 666,) the court came to the conclusion that there was no necessity for an executor or administrator to defend a suit commenced against him, except for the purpose of fixing the amount in controversy.

These cases show two things : 1. That the administrator could not defend this action upon the ground of the want of assets, but only to defeat it as a claim against the estate, or reduce its amount. 2. That he is now regarded as a *trustee for creditors*, as well as the representative of his intestate.

. It is therefore clear that as a trustee, having in his hands the assets of the estate to be disposed of by him, among other things, to pay the funeral expenses of the deceased, he ought in justice and equity to pay this demand, unless he can show that the estate is not ultimately liable. The question of assets, &c. is a matter entirely for the surrogate, and cannot be brought into these pleadings.

Now if there is any technical rule of law which allows this defendant to defend the action merely because the first administrator may have made himself personally liable on the contract, it is time the foundation of it should be examined, and if it cannot stand consistently with our present system of pleadings and the new duties of executor and administrator as defined by the Revised Statutes and the decision of the courts in other cases, it may as well be overruled and swept out of the way.

The reason of the rule, as stated in the books, is that an executor or administrator cannot create a debt against the deceased. This is exceedingly technical, but I apprehend that the authorities cited for the defendant all rest upon it for their support, so far as they deny that an executor or administrator, as such, can be sued for the funeral expenses of the deceased.

The law is, however, too well established to admit of

question, that an executor or administrator, by ordering such expenses makes himself personally liable for them. This is one proposition, but it does not necessarily follow that the estate he represents may not also be liable. Indeed, if there are assets, it is admitted that the estate is ultimately liable.

Authorities may be cited to show that the creditor may have his election either to charge the executor or administrator personally, or the estate. It is easy to see that under the former system of pleadings, when the declaration showed that the executor or administrator had promised to pay these expenses, the plaintiff was entitled to a personal judgment, whether the estate was ultimately liable or not. This being so, it followed that such a count could not be joined with a count for a debt created by the deceased, as the judgment in the latter case was necessarily *de bonis testatoris*.

The execution followed the form of the judgment, and as there could not be two judgments in the same action, authorizing different executions, it followed as a necessary conclusion that the two counts could not be joined in the same action. No such question can arise in this case, as the only object of the action is to charge the estate. If it is therefore admitted that it is a case where the first administrator could be prosecuted for the same demand, he is not a party to the action, and no judgment is to be pronounced against him in either form. It is respectfully submitted that in most if not all the cases cited to support the defendant's objection, the only question really involved was, whether the executor or administrator was *personally* liable upon the contract stated; not whether upon a *given state of facts* a suit could not be sustained against him as administrator to charge the estate. As he was personally liable upon the facts stated, it followed that the plaintiff was entitled to a judgment against him *de bonis propriis* although the estate might be ultimately liable. This pro-

duced the misjoinder of counts complained of, and is the foundation for the decisions cited to sustain the proposition that an administrator cannot create a debt against the estate, which he represents. It is, however, questionable whether an objection of this character is any longer available, under our system of pleadings, in view of the equitable jurisdiction of the court to determine in one action the ultimate liability of the parties before it, even as among the defendants themselves. (*Code of Procedure*, §§ 122 *and* 274.) By another provision of the Code, every action may be prosecuted in the name of the real party in interest, (§ 111 ;) but what is of more importance is, that *all persons* having an interest in the subject of the action and in obtaining the relief demanded, may be joined as plaintiffs, *and any person may be made defendant who has or claims an interest in the controversy adverse* to the plaintiff, *or who is a necessary party to a complete determination or settlement of the question involved therein.* (*Code*, §§ 117 *and* 118.) In view of these several provisions, the judgment may be moulded in such form as to protect the rights of all parties.

When it is admitted that the estate is ultimately liable for the payment of the funeral expenses incurred by an administrator, there is no longer any reason why it should not be a party although the administrator may be personally liable for the same demand. The estate is a proper party, as it is ultimately liable for the payment of the demand. (*Code*, § 168.)

Let it be admitted that Jacob Hartman, the first administrator, may be sued by this plaintiff. Clearly this defendant may be joined as a party, for the estate he represents has an interest adverse to the plaintiff, and is a necessary party to a complete determination or settlement of the question involved therein. The court is authorized in giving judgment to determine the ultimate rights of the defendants as between themselves. (*Code*, § 274.)

If Jacob Hartman had been made a party defendant in

this action, what would be the judgment upon the facts stated in the plaintiff's complaint? If we follow the law as laid down in the cases cited by the defendant's counsel as to the form of reaching the assets in the hands of the defendant, for the payment of the plaintiff's debt, the judgment would first determine that Jacob Hartman, who ordered the gravestones, *was personally liable* and an execution might issue against him *de bonis propriis.* Secondly, on payment of the judgment by him, an execution might issue against his successor, *de bonis testatoris* to reimburse himself for what he had thus been compelled to pay. This would be a strict determination of the rights of the defendants as between themselves, according to the theory of the defendants.

But it will be seen that there is a good deal of unnecessary circumlocution here, and that the first administrator is not a necessary party, except when it is desirable to charge him personally with the same debt. It follows, I think, that this action is well brought against the defendant as administrator, and that a demurrer will not lie because another person may be liable for the same demand, as upon the facts stated, the estate, being ultimately liable, had no interest in that question. If the original administrator had been allowed for this claim in his accounts before the surrogate it may be necessary that he should be brought in as a party before a final determination of the controversy can be made. It will be time to answer the questions growing out of such a state of facts when they arise.

Thus far I have discussed the question upon the theory that Jacob Hartman had made himself personally liable by his contract with the plaintiff. Without now undertaking to dispute the general proposition, that an administrator, with or without assets, assumes a personal liability for funeral expenses, in the absence of any special agreement, I think the law is now settled in this state,

Ferrin *v.* Myrick.

authorizing him to contract with the undertaker *on behalf of the estate* and to charge the assets in his hands with the payment of the expenses.

So far as the authorities cited deny the right of the administrator to bind the estate by such an agreement, they must be deemed to have been overruled in *Chouteau* v. *Suydam*, (21 *N. Y. Rep.* 179.) It was held in that case that an administrator, like a trustee, might enter into a written contract charging the estate with moneys received by the administrator and which he neglected to pay over to the persons entitled to them under the terms of the contract. The learned judge, who delivered the unanimous opinion in *Chouteau* v. *Suydam*, says: "When it is sought to charge the estate with a contract made by the executor or administrator, two questions arise, viz. 1st. Was the contract *intended* and understood to be made by the executor or administrator, &c. personally or in his representative character only? and 2d. If intended as such, was the contract such an one as would properly have that effect?" He then proceeds to show that the contract in question was signed by Charles Suydam, *executor*, and *prima facie* was intended to charge the estate, as it related to a matter in which the executor had no personal interest. He then proceeds to show the contract was beneficial to the estate and one which the executor, in the proper discharge of his *trust*, was authorized to make. It will be observed that in dealing with the question, the judge places a good deal of weight upon the authority of the executor as *trustee* of the estate, as distinguished from his character as the mere personal representative of the testator. The executor, he says, would be wanting *in fidelity to his trust* if he had failed to enter into the arrangement. (*Page* 183.)

And in another case, in the same court, (*Noyes* v. *Blakeman*, 2 *Seld.* 567,) a similar question arose as to the incidental authority of a trustee to make a contract binding

---

Ferrin *v.* Myrick.

---

upon the *trust* estate, and it was held that he might create a debt and charge it upon the future income of the estate, without personal responsibility, when it was necessary to protect the estate. Two of the judges (Gardiner and Jewett) dissented, on the ground that the trustee could not avoid personal responsibility and create a lien upon the estate for the expenses attending its preservation—the very ground upon which the demurrer was sustained in the case at bar, if I have not entirely misapprehended the question.

And, in both cases, it was further determined by the same court, that after the removal of the administrator or trustee, and a new one appointed, the trust estate in the hands of the new trustee remains subject to the charge.

There is still another authority which ought not to be overlooked in this connection, in *the matter of Tompkins' estate,* (41 *Barb.* 237.) There, it seems a judgment had been obtained in the Supreme Court after a trial upon the merits, against the administrator, for proper counsel fees, incurred by him in the course of his administration.

It does not appear that the administrator resisted the claim in the Supreme Court, upon the ground taken by the defendant here, although that precise question was undoubtedly involved in the issue. Upon application to the surrogate for execution upon this judgment, the question was raised, that it was not a debt " *due* by *deceased.*" He having ordered execution, an appeal was taken to the Supreme Court at general term, and the order of the surrogate was affirmed; the judge, who delivered the opinion of the court, holding that the demand was one properly chargeable upon the estate. The principle to be deduced from these authorities is that an executor or administrator, as such, may bind the estate by a contract entered into by him within the scope of his authority as trustee of the estate, or he may make himself personally liable upon the same contract.

Ferrin *v.* Myrick.

Regarding the administrator as a trustee of the estate, as well as the personal representative of the intestate, he had an undoubted right to charge the estate in his hands, by any agreement which the law authorized him to make in the proper and necessary discharge of his trust.

The only remaining question is, whether the complaint charges the agreement in question to have been made *on behalf of the estate*, and whether it is such an agreement as he was authorized to make in the proper discharge of his duties as administrator of the estate. Both of these questions have already been answered in the affirmative. The complaint expressly charges " that the said Jacob, *as such administrator*, made and entered into a contract with the plaintiff" to . furnish the gravestones. That they were suitable and not beyond the means of the estate is also admitted by the demurrer. In other words, the expenses were no more than would be allowed to him by the surrogate on his final accounting, if he had paid for them before he was removed from his trust.

On the whole, I have come to the conclusion that the plaintiff is entitled to judgment, upon the broad ground that an administrator in this state, as a trustee of the estate, may create a charge upon it for expenses attending his administration which he is authorized to incur in the proper discharge of his trust. So much is, I think, established by the decisions in the Court of Appeals, already referred to, though not without considerable opposition, and the dissent of two of its most eminent jurists.

The order appealed from should be reversed, with costs, and an order entered overruling the demurrer, with leave to the defendant to answer the complaint upon the usual terms.

Ordered accordingly.

[ONONDAGA GENERAL TERM, January 5, 1869. *Foster, Mullin* and *Morgan,* Justices.]